657 A.2d 24

**Delaine ANDREWS, Appellant,**

**v.**

**Janet WALLACE, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 24, 1995.

Filed April 12, 1995.

Paul J. Furlong, Philadelphia, for appellant.

Robert J. Campbell, Jr., Voorhees, NJ, for appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

210

OLSZEWSKI, Judge:

Delaine Andrews appeals an order denying her petition to equitably modify a default judgment. This saga begins in New Jersey, where Wallace rented a house from Andrews. Andrews sued Wallace for some overdue rent, and Wallace took the opportunity to counterclaim for a rent abatement on grounds of uninhabitability. The New Jersey trial court agreed with Wallace that her rented house was partially uninhabitable, and determined that she had been overpaying her rent for some time. Thus, the court entered a judgment for $3,000 against Andrews in the action that Andrews initiated. Andrews appealed this decision to the New Jersey appellate courts, and lost.

Before Wallace could take steps to collect this judgment, Andrews transferred title to her New Jersey property into a relative's name, becoming judgment-proof in that state. To collect on her judgment, Wallace had to execute against Andrews' Pennsylvania property. Wallace therefore transferred her judgment from New Jersey to Pennsylvania. Notice of this transfer was sent by the prothonotary and Wallace's counsel. Andrews failed to appear to contest Wallace's petition to transfer the foreign judgment, and it was entered as a default judgment. A few months later, Wallace filed a petition to reassess her Pennsylvania judgment by adding interest and attorney's fees available under New Jersey law. Again, Andrews chose not to respond to the notices sent her. Thus, Wallace obtained a Pennsylvania judgment against Andrews for about $6,700.

Apparently, a writ of execution finally got Andrews' attention. She filed a petition to stay execution of the judgment, which was denied. She appealed that decision to this Court, and we affirmed. Andrews then filed a petition in equity to modify the judgment. That too was denied, and she again appeals to this Court.

Andrews' *pro se* briefs present a maze of argument and allegation. She insists that every proceeding against her was fraught with error, and asks us to revisit and correct her

entire case. We have read her briefs and spent some time reviewing the considerable record, and must conclude that her claims are either meritless or not cognizable. In hopes of preventing further baseless litigation, we will take a moment to explain to Andrews some basics about the court system and jurisdiction.

There is no question that the original New Jersey judgment which underlies this case is valid. Andrews took an appeal to the New Jersey Superior Court, Appellate Division, which found no merit to her argument. That much is settled, and not subject to review by this Court.

Nor does Andrews convince us that the Philadelphia Court of Common Pleas erred in allowing Wallace to reassess damages after she transferred her judgment to Pennsylvania. From what Andrews presents, we glean that Common Pleas Court granted Wallace counsel fees and interest because Andrews' New Jersey appeal was frivolous. Andrews did not respond to the petition to reassess damages, and it was entered by default. She therefore should have sought to open the judgment when the writ of execution issued. The trial court found, and we agree, that Andrews can offer no excuse for her failure to respond to Wallace's petition to reassess damages. In fact, our review of the record reveals that Andrews intentionally refused to accept registered mail delivered to her address, so she could contend that she never received notice of the petition to reassess damages.[1]

The only possibly cognizable issue Andrews presents concerns jurisdiction. She strenuously argues that she never received proper notice of the transfer of the New Jersey judgment to Pennsylvania. Andrews presumes that notice must take the form of personal service of process, which she never received. Hence, she argues that Pennsylvania courts lack jurisdiction over her. As we will explain, the notice which

1. *Compare* appellee's brief, exhibits C and E. While the trial court made no findings concerning Andrews' blatant attempts to avoid acknowledging notice, we may make our own findings where the record is clear. *Brown v. Great Atlantic and Pacific Tea Co.,* 314 Pa.Super. 78, 81–83, 460 A.2d 773, 775 (1983).

the record shows she has received is adequate for these proceedings.

 In our system of justice, a person cannot be brought into court and sued without the court first obtaining jurisdiction over that person. This is called *in personam* jurisdiction; to obtain it usually requires personal service of process. Andrews began this case when she sued Wallace for back rent. By filing suit in a New Jersey court, Andrews voluntarily submitted herself to that court's jurisdiction. That is why no one has ever served original process on Andrews in this case: she started it herself. Hence, Andrews' extraordinary ability to avoid service of process, which is well documented by the record, availed her not.

With a touch of poetic justice, Andrews' New Jersey suit resulted in a judgment against her. Because Andrews effectively shielded her New Jersey property from execution, Wallace was forced to transfer this judgment to Pennsylvania, pursuant to the Full Faith and Credit Clause of the United States Constitution. Personal service was not necessary in Pennsylvania, however, because Pennsylvania courts do not need to exercise any jurisdiction over Andrews' person: no one has ever hauled her into court here. Rather, Wallace only wants the Commonwealth to exercise control over some of Andrews' Pennsylvania real estate. This is called *in rem* jurisdiction, because it involves the state exercising authority over things, not people.

 Pennsylvania courts have automatic *in rem* jurisdiction over all property located in the Commonwealth. That is part of the inherent power of a sovereign. The Commonwealth makes it possible for Andrews to own real property in Pennsylvania by maintaining a recording system, and authorizing the sheriff to eject trespassers, etc. The Commonwealth also keeps society running by using its sovereign power over property to satisfy valid judgments, through the sheriff's powers of levy and execution. All Wallace seeks is to execute her valid judgment against Andrews' Pennsylvania property.

■ The dictates of due process do require that Commonwealth authorities provide some notice before seizing a person's property to satisfy a judgment. This notice requirement is less stringent than personal service, because the Commonwealth is only going after property to satisfy a judgment which has been obtained with the fullest due process protections our society, or any society, offers.[2] Specifically, the prothonotary must mail notice to the judgment debtor. 42 Pa.C.S.A. § 4306(c)(2). This has been done to the trial court's satisfaction. *See* Opinion of 5/23/94 and order of 4/8/94. Wallace's counsel has documented the lengths to which he has gone to insure that notice was sent to Andrews' proper address. The record shows that Andrews has received proper notice of the transfer proceeding, but chose not to respond.

We therefore affirm the denial of Andrews' second petition to halt or modify the underlying judgment.

Order affirmed.

WIEAND, J., dissenting.

WIEAND, Judge, dissenting.

I respectfully dissent. The courts in Pennsylvania lack jurisdiction to alter the amount of a judgment which has been entered in New Jersey and transferred to Pennsylvania under the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306. Therefore, when a court in Philadelphia purported to increase the amount of a New Jersey judgment by adding counsel fees incurred in the New Jersey action, the order of the Philadelphia court was a nullity.

Janet Wallace had recovered a judgment in New Jersey against Delaine Andrews in the amount of $3,175.92. On or about May 10, 1991, the judgment was transferred to Philadelphia, Pennsylvania, pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306. Thereafter, Wallace filed in Philadelphia a petition to alter the amount of the

---

**2.** The judgment debtor will usually have had the benefit of personal service in the original action which resulted in the judgment; here, Andrews submitted herself to the jurisdiction of the New Jersey courts.

judgment by adding, in addition to interest, counsel fees and costs incurred in the New Jersey action. On or about October 18, 1991, the court in Philadelphia ordered the judgment increased to $6,669.25. On or about October 31, 1991, Wallace caused execution to be issued on the increased judgment against real estate owned by Andrews in Pennsylvania. A petition for stay was denied by the trial court, whose order was affirmed on appeal to the Superior Court by unpublished memorandum. See: *Andrews v. Wallace*, 433 Pa.Super. 647, 639 A.2d 835 (1993). In its memorandum decision, the Superior Court suggested that error in the computation of damages should be made by a petition to modify judgment and not by a petition to stay the execution.

Andrews then filed pro se a petition to modify the amount of the judgment. When the trial court refused the requested relief, Andrews appealed to this Court.

The validity of a foreign judgment is established in the transferor court under the Uniform Enforcement of Foreign Judgments Act. 42 Pa.C.S. § 4306. The judgment may not be retried in the transferee court, except for the limited purpose of determining whether the transferor court had jurisdiction to enter the judgment and whether the judgment was obtained without derogating the judgment debtor's due process rights. *Barnes v. Buck*, 464 Pa. 357, 364, 346 A.2d 778, 782 (1975); *Tronagun Corp. v. Mizerock*, 820 F.Supp. 225 (W.D.Pa.1993). Such judgments are entitled to full faith and credit, and the transferee court may not relitigate the amount due. *Id.* Accord: *Matson v. Matson*, 333 N.W.2d 862 (Minn. 1983) (Act prohibits Minnesota court from reducing amount of Wisconsin judgment).

Thus in the case sub judice, the court in Philadelphia lacked jurisdiction to reassess the amount of damages awarded by the judgment in New Jersey. That judgment was entitled to full faith and credit in Pennsylvania, where the courts could not relitigate the cause of action to increase or decrease the amount of the judgment. If appellee was entitled to recover counsel fees in connection with the underlying New Jersey litigation, the place to assert that claim was in New Jersey,

the transferor state, and not in Pennsylvania, the transferee state.

Because the court in Pennsylvania lacked jurisdiction to relitigate the judgment, its attempt to modify the New Jersey judgment by adding counsel fees incurred in New Jersey was a nullity. The correct amount of appellee's judgment is $3,175.92, as certified by the New Jersey court on September 13, 1990, plus interest. See: *Dooley v. Rubin*, 422 Pa.Super. 57, 618 A.2d 1014 (1993).

For these reasons, I would strike from the amended judgment in Pennsylvania all sums in excess of $3,175.92, plus interest.